Haynes, J.
In this case the plaintiffs are partners, and The Sylvania Butter Company is a corporation incorporated under the laws of the state of Ohio, doing business at Sylvania, Ohio. At the time the occurrences commenced upon which arose the matter in controversy, Burnap & Burnap were engaged in the business, it seems, of erecting butter factories, or creameries. The course of business they pursued was,in substance, to proceed to some place and obtain signatures from persons who might be willing to take an interest in the erection under contract of a creamery building, The parties who signed, signed a paper or a contract to which I will refer later on, and when a certain number and amount of signatures were obtained, Burnap & Burnap proceeded to put up a building on property which was dedicated for that purpose, to be designated by Burnap & Burnap, And it was agreed and expected that the parties who signed this paper would proceed to become an incorporated company, and the ultimate result would be that there would be a conveyance of the property .to the corporation. The parties who made signature, signed for a certain number of shares in the corporation, provisions being made that they should be entitled to share in the proportion to the amount they should pay upon their subscriptions. In this case the contract provided, among other things:
“Burnap & Burnap, of Toledo, Ohio, party of the first part, hereby agree with the undersigned subscribers hereto, party of the second part, to build, erect, complete and equip for said party of the second part, a butter factory at or near Sylvania, Lucas County, Ohio, as follows, to-wit:“
*641 And then follows a description of the property, building, etc.
“Said building shall be constructed in substantial accord■anee with the specifications hereon, in a workmanlike manner, the boiler and all other machinery and fixtures, shall be properly set up, and shall be in good running order before the party of the second part shall be required to pay for said factory. The party of the second part agrees to select suitable and reasonable level land for said building, together with well, spring or reservoir on said lot, for the use of the business; and it is further understood that in case the said second party shall fail to furnish said laud and water within ten days after the execution of this contract, the full one-fourth part face value of each of the subscriptions hereto shall constitute and be liquidated damages to be paid by said subscribers to said first party.”
Then follow two clauses:
“As soon as the above amount ($3,150), is subscribed, or in a reasonable time thereafter, the subscribers agree to incorporate under the laws of the state, as therein provided, •fixing the aggregate amount of stock at not less than the amount subscribed, to be divided into shares of $100 each. Said share or shares, as above stated, to be issued to the subscribers hereto in proportion to their paid up interest herein, and each stockholder shall be liable only for the amount subscribed by him.
“It is further understood by and between the parties hereto, that if the subscriptions hereto shall amount to more than $3,150 and less than $4,500, the foregoing agreement, designated “Form A,” shall constitute the agreement between the parties, except as hereinafter specified. If' the subscriptions hereto shall amount to $4,500 or more, than the agreement hereto attached, designated “Form B,” shall constitute the agreement between the parties.”
Form “B 2” containing the above provisions, the same as form “A.”
The signatures to these papers are substantially in the same form in the printed heading — '“Names of subscribers, ” “No. of shares,” “Amount of stock after incorporation. ” *642 The first one is “Earl Harroun, 1 share, $100“ The others follow, a certain number of shares and a certain amount.
The agents or persons employed by Burnap & Burnap proceeded to solicit subscriptions to this stock until they obtained the requisite amount of $4,500 subscribed to the stock of the company. They got one party to subscribe for two shares, to be paid for in land. The plaintiff • went to work and put up the building, and finished it completely, and at a meeting of those who had subscribed to the stock, it was delivered to them,and they took possession of it. Subsequently to that certain of the stockholders formed a corporation, and these premises were deeded by the person who had made that subscription to that corporation, and they are now held by the Butter Company. It turns out in the end that the amount of stock that was subscribed was not all paid; that there was only collected some $3,000, or an amount which would leave an indebtedness of about $1,300 unpaid. There are $300 of subscriptions that the parties making them say that they agreed with the agents to pay in land, and they are willing to make the conveyances in land as they agreed, but money they will not, leaving about $1,000 subscribed by parties who can not be compelled to pay by action at law — ’execution proof, it is said — who have not at any time made any payments whatever, nor have they become stockholders in the corporation.
Under this state of facts Burnap & Burnap proceeded in due time to file a mechanic’s lien against this property, and an action at law was begun against the parties, and also to enforce the mechanic’s lien. The action at law has been disposed of. This action, which was a part of that one, remains, and has been brought into this court for the purpose of enforcing the mechanic’s lien upon the premises. The plaintiffs claim that they were entitled to a mechanic’s lien upon the whole premises, or at least upon a pro rata share of the *643 premises equal to the amount of stock that is still unpaid, to-wit: $1,300; and the question here is whether they are entitled to maintain an action to enforce the mechanic’s lien, or whether they have rightfully any mechanic’s lien upon the premises.
The question is an interesting one, and has been argued very fully by counsel, and authorities have been cited; but there are not many authorities to be cited upon this particular question. The primary question that suggests itself to the mind of the court is, whether this contract is a joint or several contract. We think there is no question, under the authorities, that it is a several contract; and it is not very strongly contended; indeed, it is admitted, that the weight of authority is in favor of that proposition. There is only one case that really approaches this case, in regard to the mechanic’s lien, and that is 63 Mo. 477, which was decided by the Missouri Court of Appeals, sitting at Kansas City. It was held in that case that there was - no mechanic's lien obtained by the promoters who were, there, Da,vis & Rankin, who had a contract substantially like this. It was suggested that there might be a lien on some part of the property, but the court held, under the proofs and pleadings of that case, that the lien could not be sustained.
There is a case found in the Iowa reports that throws a little light upon the subject — Smith v. Iowa City Loan Association, 30 Ia. 164. That is a case where a building company had agreed to sell a lot to a third party, B. and C. the contractor, agreed with the building company to put upon the premises a house for B. The association was to pay $875,and B. was to pay $125, the title still remaining in the association. C. contracted directly with the association to build. Afterwards B. refused to pay the $125, the building having been built, and eventually refused to take the property. C. sought to enforce a mechanic’s lien on the premises, and the Supreme Court held he could not do so. *644 The only person to whom he expected to look or could look was the association, and the contract with it being for $875, and it having tendered that and offered to pay it, there was no mechanic's lien.
R. S. Holbrook, for plaintiffs.
George O. Boone and J. C. Jones, for defendants.
. Without discussing the question at length, we think, as was intimated on the trial, that no lien should be allowed in this case upon any portion of this property— largely for the reason that under this contract there was an agreement that persons were to take this number of shares, and the property was to be deeded to the corporation, and stock was to be issued to the parties in proportion to the amount paid,and none others; and there was also an agreement between Burnap & Burnap and these parties that the persons who subscribed for stock should not be held in any manner or form for the action of the other parties, or for the debt of the other parties. To fasten the lien upon an aliquot portion of this property would be simply to make a provision that unless the owners of a balance of the stock of the corporation itself paid the amount of $1,300, then th’eir property should be sold. It is as bad for them as if they had sold the Whole of it, so far as that is concerned, Underthe circumstances Burnap & Buruap, promoting this scheme, making arrangements for the corporation, making provision that the slock should be issued to persons only who paid for it, and that the property should be deeded to the corporation, we think have no right to take a mechanic’s lien, and they ought not, either in equity or justice, have any lien on the property as against the corporation. Whether or not they should be subrogated to the rights of the parties who have not paid for the stock we do not decide, but as the case now stands, the petition will be dismissed.